UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ASHLAND INC., Plaintiff, | ) |
| v. | ) CA 08 227 T |
| GAR ELECTROFORMING, | ) |
| THE BLACK AND DECKER CORPORATION, | ) COMPLAINT |
| | ) C.A. NO. ______ |
| EMHART INDUSTRIES, | ) |
| MORTON INTERNATIONAL, INC., | ) |
| ROHM & HAAS COMPANY, | ) |
| ACCO-BRISTOL DIVISION OF BABCOCK INDUSTRIES, | ) |
| BRISTOL, INC., | ) |
| PERKIN-ELMER CORPORATION, | ) |
| APPLERA CORP., and | ) |
| UNITED TECHNOLOGIES CORPORATION, Defendants. | ) |

COMES NOW plaintiff ASHLAND INC. ("Ashland" or "Plaintiff"), by counsel, and for its Complaint against defendants, GAR ELECTROFORMING, THE BLACK AND DECKER CORPORATION, EMHART INDUSTRIES, MORTON INTERNATIONAL, ROHM & HAAS COMPANY, ACCO-BRISTOL DIVISION OF BABCOCK INDUSTRIES, BRISTOL, INC.,

PERKIN-ELMER CORPORAITON, APPLERA CORP., UNITED TECHNOLOGIES COMPANY (collectively, "Generator Defendants"), pursuant to §107(a) and §113(f)(1) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") (42 U.S.C. § 9607(a) and 9613(f)(1)), states as follows:

## INTRODUCTION

1. Ashland seeks recovery from the Generator Defendants of response costs associated with cleanup of groundwater at the Davis Liquid Waste Superfund Site in Smithfield, Rhode Island ("Davis Site") pursuant to § 107(a) of CERCLA, and under Rhode Island state law for recovery of response costs, contribution and equitable indemnification in connection with groundwater modeling and remediation. Ashland also seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, regarding the liability among the Generator Defendants for future costs of responding to the groundwater contamination at the Davis Site.

2. Plaintiff voluntarily has incurred and will continue to incur response costs in connection with the modeling and performance of groundwater remediation at the Davis Site. Because of its efforts in connection with the ongoing modeling and remediation of groundwater at the Davis Site, Plaintiff has spent slightly less than Two Million Dollars ($2,000,000.00) in total recoverable response costs.

## PARTIES

3. Plaintiff Ashland Inc. ("Ashland") is a Kentucky corporation with its principal offices in Covington, Kentucky.

4. Defendant Gar Electroforming ("Gar") is or was a Maryland corporation with its principal offices in Towson, Maryland.

5. Defendant Emhart Industries ("Emhart"), upon information and belief, is a successor in interest or by merger to the whole or a part of Gar Electroforming, and is a Connecticut corporation with is principal offices in Towson, Maryland.

6. Defendant The Black and Decker Corporation ("Black & Decker"), upon information and belief, is a successor in interest or by merger to the whole or a part of the entity formerly known as Gar Electroforming, and has its principal offices in Towson, Maryland.

7. Defendant ACCO-Bristol Division of Babcock Industries ("ACCO-Bristol"), upon information and belief, is now known as Bristol Babcock, Inc., a corporation with offices located in Watertown, Connecticut and St. Louis, Missouri.

8. Defendant Bristol, Inc. ("Bristol") is the successor in interest or by merger to the whole or a part of ACCO-Bristol Division, and is a Delaware corporation with primary offices located in St. Louis, Missouri.

9. Defendant Morton International, Inc. ("Morton"), upon information and belief, formerly was known as Thiokol Corp., is a corporation with its principal offices located in Philadelphia, Pennsylvania.

10. Defendant Rohm & Haas Co. ("Rohm & Haas"), upon information and belief, is the successor in interest or by merger to the whole or a part of Morton International, Inc. and/or Thiokol Corp., and is a Delaware corporation with its principal offices located in Philadelphia, Pennsylvania.

11. Defendant Perkin-Elmer Corporation ("Perkin-Elmer") is or was a New York corporation with its principal offices in Norwalk, Connecticut. Upon information and belief, the

pertinent part of Perkin-Elmer Corporation became PE Corporation in or around 1999, and subsequently merged with or was succeeded by Applera Corporation.

12. Defendant Applera Corporation ("Applera"), upon information and belief, is the successor in interest or by merger to the whole or a part of Perkin-Elmer Corporation, and is a corporation with its principal office located in Norwalk, Connecticut.

13. Upon information and belief, defendant United Technologies Corporation ("UTC") is a Delaware corporation with its principal offices in Hartford, Connecticut.

## JURISDICTION AND VENUE

14. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States at 42 U.S.C. §§ 9607 and 9613(b), and has jurisdiction of the declaratory judgment action pursuant to 28 U.S.C. § 2201.

15. This Court also has supplemental jurisdiction over Ashland's state law claims pursuant to 28 U.S.C. § 1367, as those state law claims are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy.

16. This Court has jurisdiction over each of the Generator Defendants because each of the Generator Defendants contributed to the contamination of the Davis Site.

17. Venue is appropriate in this Court because the Davis Site is located within the District of Rhode Island.

## FACTS

**History of the Davis Site**

18. Throughout the 1970s, the Davis Site, which was owned and operated by William M. Davis and Eleanor Davis, accepted liquid and chemical wastes such as paint and metal sludges, oily wastes, solvents, acids, caustics, pesticides, phenols, halogens, metals, fly ash, and laboratory pharmaceuticals. The dumping at the Davis Site contaminated the soil, groundwater, and surface water.

19. During 1976 and most of 1977, at least 844,275 gallons of hazardous wastes were dumped at the Davis Site, which was closed by court order toward the end of 1977.

20. Most of the waste was in liquid form and was delivered to the Davis Site in either 5,000-gallon tanker trucks, fifty-five-gallon drums that had been loaded on flatbed trucks, or smaller containers ranging from five-gallon cans to small ampules, vials and jars.

21. By publication in the Federal Register on September 8, 1983, 48 Fed. Reg. 40671, the United States Environmental Protection Agency (the "EPA") placed the Davis Site on the National Priorities List ("NPL"), set forth at 40 C.F.R. Part 300, Appendix B, pursuant to §105 of CERCLA, 42 U.S.C. § 9605.

22. In addition, the EPA performed a Remedial Investigation and Feasibility Study for the Davis Site pursuant to 40 C.F.R. § 300.430. It completed a Remedial Investigation Report in November 1986 and a Feasibility Study Report for the Davis Site in April 1987.

23. Pursuant to §117 of CERCLA, 42 U.S.C. § 9617, the EPA published notice of the completion of the Feasibility Study Report and of the proposed plan for remedial action of the

soil contamination, and provided an opportunity for public comment on the proposed plan for remedial action.

24. The decision of the EPA on the remedial action to be implemented at the Davis Site is embodied in a final Record of Decision ("ROD"), executed on September 29, 1987, notice of which was published in accordance with §117(b) of CERCLA, 42 U.S.C. § 9617(b).

25. The remedial action to be performed at the Site was modified by an Explanation of Significant Differences signed on July 19, 1996, notice of which was published in accordance with §117(c) of CERCLA, 42 U.S.C. § 9617(c).

26. In 1990, the United States commenced an action against nine defendants, including defendant UTC. The United States sought relief pursuant to § 107 of CERCLA, 42 U.S.C. § 9607(a), for remediation and enforcement costs already incurred and a declaratory judgment, pursuant to § 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), holding the defendants jointly and severally liable for all future response costs. Eventually, UTC, among others not named in this matter, was held jointly and severally liable.

27. In February 1993, UTC and several other defendants asserted claims pursuant to CERCLA §113, 42 U.S.C. § 9613, for contribution and/or indemnity against several co-defendants and 138 third- and fourth-party defendants. In addition, UTC requested the Court to enter a judgment allocating responsibility among the parties for future response costs. Ashland and each of the Generator Defendants was among the third-party defendants brought into the matter by UTC and/or the other original defendants seeking contribution.

28. The United States did not assert claims under CERCLA § 106 or § 107, nor any claims whatsoever, against either Ashland or any of the Generator Defendants, except for UTC.

29. Most of the original claims, as well as the third- and fourth-party claims asserted in the litigation either were settled or dismissed, except for UTC's request for a declaratory judgment allocating responsibility for future cleanup costs among fifteen remaining contribution defendants. These fifteen defendants included Ashland and all of the Generator Defendants named herein. UTC and eight other defendants eventually tried the matter before the United States District Court for the District of Rhode Island.

30. In US v. Davis, 31 F. Supp. 2d 45 (1998), the Court found that pursuant to CERCLA §113(f), 42 U.S.C. § 9613(f), Defendants ACCO-Bristol Div. of Babcock Industries, Thiokol Corp., Gar Electroforming, Perkin-Elmer Corp., UTC and Ashland, among others, were liable for cleanup costs. With one exception, each of those parties was assigned a percentage of liability. Because the remaining defendants all had entered into Partial Consent Decrees ("PCDs"), the Court only assigned a relative liability among the fifteen parties that took UTC's contribution claim to trial.

31. Even so, according to the Court's opinion, only 3.33% of the total waste disposal at the Davis Site was assigned to Ashland and the Generator Defendants. The equitable shares of liability were apportioned among Ashland and the Generator Defendants as follows:

| | |
|---|---|
| ACCO-Bristol | 0.16% |
| Ashland | 1.03% |
| Gar | 0.03% |
| Perkin-Elmer | 0.57% |
| UTC | 1.54% |

32. Defendant ACCO-Bristol/Bristol was found to have contributed hazardous materials and wastes to the Davis Site, including, among others, waste sludge containing 1,1,1-TCA, solutions of soap and cyanide and compounds containing nickel, copper and/or cadmium and cyanide.

33. Defendant Gar/Emhart/Black & Decker was found to have contributed hazardous materials and wastes containing nitric acid, copper, nickel and cyanide to the Davis Site.

34. Defendant Perkin-Elmer/Applera was found to have contributed hazardous materials and wastes to the Davis Site, including cutting oil, spent solvents (including 1,1,1-TCA and toluene), paint sludge, hydrochloric acid, sulfuric acid, muriatic acid and methylene choride.

35. Although it was not assigned a percentage of liability, the District Court found that Thiokol/Morton/Rohm & Haas undoubtedly had generated waste of the same type found at the Davis Site. Specifically, Thiokol contributed waste (consisting primarily of spent solvents used in cleaning machinery and laboratory equipment) from three plants located in Trenton, New Jersey. Moreover, the Court found that it was reasonable to infer, and therefore more likely than not, that a certain transport company had transported that waste to the Davis Site. However, the Court also concluded it could not assign a volume of waste to Thiokol based on the evidence before it, and therefore could not assign a numerical proportion for Thiokol's liability.

36. Other defendants were named in the Court's opinion but are not named herein because they were either defunct or impecunious at the time of the Court's decision.

**Soil Remediation Efforts**

37. In or about November of 1996, the EPA and a group of defendants (which included some of the original nine defendants and many of the third- and fourth-party defendants) (the "Settling Defendants") entered into a Partial Consent Decree (the "PCD"). The PCD was lodged with the United States District Court for the District of Rhode Island to address the cleanup costs of the surface contamination at the Davis Site.

38. The PCD, among other things, includes a work-based component requiring the Settling Parties to perform soil cleanup at the Davis Site. Although the ROD refers to a groundwater component in its section addressing management of migration components, the PCD specifically excludes the ROD's management of migration components (such as the groundwater cleanup) from the defined "Remedial Action" covered by the PCD.

39. The PCD also provides protection from contribution actions pursuant to CERCLA §113(f), 42 U.S.C. § 9613(f), for the work contemplated under the PCD, which specifically excludes the groundwater cleanup for which Ashland now seeks cost recovery. Thus, the PCD provides no protection for UTC, the only defendant named herein who signed the PCD, for any efforts made to clean up the groundwater contamination at the Davis Site.

40. In or about January 2000, upon information and belief, UTC entered into a Second Consent Decree with the State of Rhode Island. This Second Consent Decree is more comprehensive in its scope than the PCD, and purports to resolve all liability related to state law claims under Rhode Island law for claims pertaining to work performed at the Davis Site.

41. Upon information and belief, the cleanup required by the PCD of the contamination on the surface at the Davis Site by the parties who settled with the EPA has not been completely effective. Contaminants continue to leach from the soil into the groundwater.

**The Groundwater Remediation**

42. An effective cleanup effort of the groundwater appears to be impossible given the Settling Defendants' deficient cleanup of the contamination on the surface at the Davis Site. Without further remedial efforts of both the soil at the Davis Site, as well as the groundwater component contemplated in the ROD but specifically excluded from the Remedial Action covered by the PCD, the Davis Site likely cannot be fully remediated.

43. Since the Davis decision, Ashland voluntarily has incurred slightly less than Two Million Dollars ($2,000,000.00) in response costs related to ongoing modeling and remediation efforts for the groundwater contamination at the Davis Site.

44. The work that has comprised these costs is the type of work specifically excluded from the scope of work defined in the PCD signed by UTC. Ashland voluntarily has undertaken these response costs, even though the company was not subject to any government enforcement action directly, and even though the primary defendant in the original action (UTC) has not participated in the response work.

45. Moreover, Ashland has undertaken these costs even though the Generator Defendants and other parties among the parties who settled in the original litigation are liable for the contamination present at the Davis Site.

46. Additionally, Ashland will continue to incur future response costs because of its voluntary efforts to respond to the groundwater contamination. The remedy contemplated by the federal and state governments is meant to address the contamination remaining in both the shallow and deeper aquifers beneath the site, by means of extraction and on-site treatment of contaminated groundwater, followed by years of monitoring.

47. Each of the Generator Defendants by contract, agreement or otherwise, arranged for the disposal or treatment of hazardous substances at the Davis Site or the transport of hazardous substances to the Davis Site.

## COUNT I – COST RECOVERY

48. Plaintiffs repeat and reallege, as if fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

49. The Davis Site is a "facility" within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9).

50. Each of the Generator Defendants is a "person" as that term is defined under CERCLA § 101(21), 42 U.S.C. § 9601(21).

51. The presence of contaminants in the groundwater in and around the Davis Site constitutes a "release" or "threatened release" of "hazardous substances" within the meaning of CERCLA § 101(14) and (22), 42 U.S.C. § 9601(14) and (22).

52. Each of the Generator Defendants arranged for disposal of its hazardous substances, or arranged with a transporter for transport for disposal of its hazardous substances, and those substances were disposed of at the Davis Site. Each of the Generator Defendants therefore is liable for necessary costs of responding to the release or threatened release of such hazardous substances.

53. Plaintiff has undertaken investigations and response actions in connection with the Davis Site in response to releases or threatened releases of hazardous substances, and has incurred necessary costs of response that are consistent with the NCP.

54. Because of its connection to the Davis Site as alleged above, each of the Generator Defendants is liable to Ashland under CERCLA § 107(a), 42 U.S.C. § 9607(a), for response costs Ashland has incurred at the Davis Site to respond to and remediate groundwater contamination.

**COUNT II – STATUTORY CONTRIBUTION**
**(State Law Claim Against All Defendants Except UTC)**

55. Plaintiff repeats and realleges as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. Rhode Island's Uniform Contribution Among Tortfeasors Act, R.I. Gen. Laws § 10-6-1, *et seq.*, provides for a right of contribution among joint tortfeasors. The purpose of this Act is to avoid the injustice of having one tortfeasor pay more than its fair share of damages.

57. By virtue of the District Court's ruling in US v. Davis, each of the named parties, except UTC, because of the Second Consent Decree, is jointly or severally liable for the same injury to property, and therefore each is a "joint tortfeasor," as that term is defined in R.I. Gen. Laws § 10-6-2 (2008).

58. Ashland has incurred slightly less than Two Million Dollars ($2,000,000.00) in response costs related to the Davis Site, and expects to incur additional response costs and other costs of remediation in the future.

59. As a result of Ashland's expenditures, all of the Generator Defendants except for UTC are liable to Ashland for contribution under Rhode Island law for all response costs and other monetary liability incurred by Ashland that is in excess of the equitable, proportionate share of liability ascribed to Ashland by the District Court.

60. Additionally, costs for the groundwater modeling and remedy (such as those costs expended by Ashland and for which Ashland seeks damages) are not part of the PCD entered into by UTC, which specifically excludes the ROD's management of migration components (such as the groundwater cleanup) from the defined "Remedial Action" covered by the PCD.

**COUNT III – EQUITABLE INDEMNIFICATION**
**(State Law Claim)**

61. Plaintiff repeats and realleges as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62. By virtue of the District Court's finding in U.S. v. Davis, Ashland and each of the Generator Defendants share liability related to the release of hazardous materials at the Davis Site. Therefore, each of the Generator Defendants and Ashland must share jointly and proportionately in the response costs related to the modeling and remediation efforts to clean up groundwater at the Davis Site.

63. To date, as between Ashland and each of the Generator Defendants, Ashland is entitled under equitable considerations to indemnity from each and every Generator Defendant for response costs and future, additional costs of response and remediation of the groundwater at the Davis Site, as such costs exceed Ashland's proportionate share of liability for the released hazardous materials.

64. Under equitable principles, Ashland is entitled to equitable indemnification regardless of any settlement, release or adjudication (including the Second Consent Decree) that has taken place in connection with the Davis Site.

**COUNT IV – DECLARATORY JUDGMENT**

65. Plaintiff repeats and realleges as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. The allegations contained herein and the District Court's apportionment of liability demonstrate an actual and substantial controversy between parties having adverse interests.

67. Each of the Generator Defendants and Ashland all share a common liability for the future response costs of the groundwater cleanup at the Davis Site.

68. Given that Ashland has spent far more than any other party and more than its pro rata share of the common liability in connection with groundwater clean-up efforts to date, it is clear that Ashland will be required to pay more than its pro rata share of the common liability in future clean-up costs. A determination of liability for future costs therefore is necessary.

## PRAYER FOR RELIEF

WHEREFORE, Ashland hereby demands judgment in its favor and against Generator Defendants as follows:

1. exercising supplemental jurisdiction over Ashland's claims for contribution and equitable indemnification;

2. declaring each and every one of the Generator Defendants strictly, jointly and severally liable for necessary response costs, consistent with the National Contingency Plan, relating to the Davis Site;

3. declaring each and every one of the Generator Defendants a former arranger pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), and liable to Plaintiff for the necessary costs of response incurred by Plaintiff in connection with the Davis Site;

4. awarding Plaintiff its response costs incurred to date, under CERCLA § 107(a) and applicable state statutory or common law, in an amount to be determined at trial but

approximately Two Million Dollars ($2,000,000.00), less Plaintiff's share of liability for clean-up costs at the Davis Site;

5. declaring each and every one of the Generator Defendants liable for all future necessary costs of response incurred by Plaintiff in connection with the Davis Site;

6. awarding Plaintiff interest and costs of suit, including reasonable attorneys' fees; and

7. awarding Plaintiff such other relief as the Court deems just and meet.

Respectfully submitted,
ASHLAND INC.
By its attorneys,

Anthony F. Muri, Esq. (R.I. Bar No. 539)
amuri@murilaw.com
MURI ASSOCIATES LLC
10 Weybosset Street
Providence, RI 02903-2808
(401) 421-7300 (telephone)
(401) 421-7352 (facsimile)

Of Counsel:

Hunter W. Sims, Jr., Esq.
hwsims@kaufcan.com
David B. Graham, Esq.
dbgraham@kaufcan.com
Beth V. McMahon, Esq.
bvmcmahon@kaufcan.com
W. Hunter Old, Esq.
whold@kaufcan.com
KAUFMAN & CANOLES, P.C.
P.O. Box 6000
Williamsburg, Virginia 23188
(757) 259-3800 (telephone)
(757) 259-3838 (facsimile)

6194092\5