UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ASHLAND INC., Plaintiff<br><br>GAR ELECTROFORMING,<br><br>THE BLACK AND DECKER CORPORATION<br><br>EMHART INDUSTRIES,<br><br>MORTON INTERNATIONAL, INC.,<br><br>ROHM & HAAS COMPANY,<br><br>ACCO-BRISTOL DIVISION OF BABCOCK INDUSTRIES,<br><br>BRISTOL, INC.,<br><br>PERKIN-ELMER CORPORATION,<br><br>APPLERA CORP., and<br><br>UNITED TECHNOLOGIES CORPORATION,<br><br>Defendants | ANSWER, SPECIAL DEFENSES, COUNTERCLAIMS, AND CROSS-CLAIMS<br>CA. NO. 08 227T |

The Defendant United Technologies Corporation ("UTC") hereby responds as follows to the Plaintiff's Complaint.

## ANSWER

## INTRODUCTION

1. UTC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and leaves Plaintiff to its proof.

2. UTC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and leaves Plaintiff to its proof.

## PARTIES

3. UTC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and leaves Plaintiff to its proof.

4. Paragraph 4 is admitted.

5. Paragraph 5 is admitted.

6. Paragraph 6 is admitted.

7. Paragraph 7 is admitted.

8. Paragraph 8 is admitted.

9. Paragraph 9 is admitted.

10. Paragraph 10 is admitted.

11. Paragraph 11 is admitted.

12. Paragraph 12 is admitted.

13. Paragraph 13 is admitted.

## JURISDICTION AND VENUE

14. Paragraph 14 states a legal conclusion to which no responsive pleading is required.

15. Paragraph 15 states a legal conclusion to which no responsive pleading is required.

16. UTC admits that this Court has jurisdiction over UTC pursuant to its decision in United States v. William M. Davis, et al., 31 F. Supp. 2d 45 (D.R.I. 1998).

17. UTC admits that the Davis Site is located within the District of Rhode Island. The remainder of Paragraph 17 states a legal conclusion to which no responsive pleading is required.

## FACTS

### History of the Davis Site

18. UTC admits the facts established in this Court's decision in U.S. v. Davis, 31 F. Supp. 2d 45 (1998), to which Ashland is also bound.

19. UTC admits the facts established in this Court's decision in U.S. v. Davis, 31 F. Supp. 2d 45 (1998), to which Ashland is also bound.

20. UTC admits the facts established in this Court's decision in U.S. v. Davis, 31 F. Supp. 2d 45 (1998), to which Ashland is also bound.

21. UTC responds that the publication in the Federal Register on September 8, 1983, 48 Fed. Reg. 40671 speaks for itself.

22. Paragraph 22 is admitted.

23. UTC admits that EPA published notices related to the Feasibility Study Report and the proposed remedial action plan, and further responds that said notices speak for themselves.

24. UTC admits the facts established in this Court's decision in U.S. v. Davis, 31 F. Supp. 2d 45 (1998), to which Ashland is also bound. UTC admits that EPA issued a Record of Decision dated September 29, 1987 and that notice of it was published pursuant to CERCLA, but denies that the Record of Decision constituted "the decision of the EPA on the remedial action to be implemented at the Davis Site" insofar as the EPA supplemented the ROD with the Explanation of Significant Differences.

25. UTC admits that EPA issued an Explanation of Significant Differences ("ESD") signed on July 19, 1996 which was also published pursuant to CERCLA, which ESD speaks for itself.

26. UTC admits the first sentence of Paragraph 26. As to the second sentence, UTC responds that the complaint in the action commenced by the United States speaks for itself. As to the third sentence, the court's decision in the action speaks for itself.

27. UTC admits that it asserted claims against co-defendants, third-party defendants, and fourth-party defendants, including Ashland and certain of the Generator Defendants, which claims speak for themselves.

28. UTC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 regarding Ashland or the Generator Defendants and leaves Plaintiff to its proof. With respect to claims asserted by the United States against UTC, UTC adopts its response to Paragraph 26 above as though fully set forth herein.

29. UTC admits that it settled or dismissed many third- and fourth-party claims and that those claims not settled or dismissed, including those against Ashland and certain of the Generator Defendants, were the subject of a trial, resulting in the decision in United States v. William M. Davis, et al., 31 F. Supp. 2d 45 (1998).

30. UTC responds that the court's decision in US v. Davis, 31 F. Supp. 2d 45 (1998) speaks for itself.

31. UTC responds that the court's decision in US v. Davis, 31 F. Supp. 2d 45 (1998) speaks for itself.

32. UTC responds that the court's decision in US v. Davis, 31 F. Supp. 2d 45 (1998) speaks for itself.

33. UTC responds that the court's decision in US v. Davis, 31 F. Supp. 2d 45 (1998) speaks for itself.

34. UTC responds that the court's decision in US v. Davis, 31 F. Supp. 2d 45 (1998) speaks for itself.

35. UTC responds that the court's decision in US v. Davis, 31 F. Supp. 2d 45 (1998) speaks for itself.

36. UTC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 and leaves Plaintiff to its proof as to the reason certain defendants were not named in this suit, and further responds that this Court's decision in US v. Davis, 31 F. Supp. 2d 45 (1998) speaks for itself regarding such other defendants.

**Soil Remediation Efforts**

37. UTC admits that in 1996 EPA entered into a Partial Consent Decree with a number of defendants, third-party defendants, and fourth-party defendants, which Partial Consent Decree was lodged with the United States Court for the District of Rhode Island. UTC further responds that the terms of the Partial Consent Decree speak for themselves.

38. UTC responds that the terms of the Partial Consent Decree speak for themselves.

39. As to the first sentence of Paragraph 39, UTC responds that the terms of the Partial Consent Decree speak for themselves. UTC denies the second sentence of Paragraph 39.

40. UTC admits that in 1999 it entered into a Consent Decree with the State of Rhode Island, the terms of which speak for themselves.

41. UTC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and leaves Plaintiff to its proof, and further responds that it completed the cleanup required by the PCD in accordance with the terms of the PCD and EPA has certified the satisfactory completion of the cleanup required by the PCD.

**The Groundwater Remediation**

42. UTC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 and leaves Plaintiff to its proof, but denies that the Settling Defendants' cleanup was deficient.

43. UTC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 and leaves Plaintiff to its proof.

44. UTC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 and leaves Plaintiff to its proof.

45. UTC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 and leaves Plaintiff to its proof, and further responds that UTC is not liable for the costs incurred by Plaintiff.

46. UTC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 and leaves Plaintiff to its proof.

47. UTC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 as to any other Generator Defendant and leaves Plaintiff to its proof. UTC further responds that these allegations were the subject of prior litigation, the decisions in which are a matter of public record.

**COUNT I – COST RECOVERY**

48. UTC repeats and adopts its responses to the preceding paragraphs of the Complaint as though fully set forth herein.

49. Paragraph 49 is admitted.

50. Paragraph 50 is admitted as to UTC.

51. Paragraph 51 is admitted.

52. As to the first sentence of Paragraph 52, UTC responds that these allegations were the subject of prior litigation, the decisions in which are a matter of public record. As to the second sentence of Paragraph 52, UTC denies that it is liable for any further costs of responding to the release or threatened release of such hazardous substances.

53. UTC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 and leaves Plaintiff to its proof.

54. Paragraph 54 is denied as to UTC.

**COUNT II – STATUTORY CONTRIBUTION**
**(State Law Claim Against All Defendants Except UTC)**

55. This count of the Complaint is not directed to UTC and therefore no response is required.

56. This count of the Complaint is not directed to UTC and therefore no response is required.

57. This count of the Complaint is not directed to UTC and therefore no response is required.

58. This count of the Complaint is not directed to UTC and therefore no response is required.

59. This count of the Complaint is not directed to UTC and therefore no response is required.

60. This count of the Complaint is not directed to UTC and therefore no response is required.

**COUNT III – EQUITABLE INDEMNIFICATION**
**(State Law Claim)**

61. UTC repeats and adopts its responses to the preceding paragraphs of the Complaint as though fully set forth herein.

62. Paragraph 62 is denied as to UTC.

63. Paragraph 63 is denied as to UTC.

64. Paragraph 64 is denied as to UTC.

**COUNT IV – DECLARATORY JUDGMENT**

65. UTC repeats and adopts its responses to the preceding paragraphs of the Complaint as though fully set forth herein.

66. Paragraph 66 is denied as to UTC.

67. Paragraph 67 is denied as to UTC.

68. Paragraph 68 is denied as to UTC.

## SPECIAL DEFENSES

1. The Plaintiff has failed to state a claim upon which relief can be granted.

2. The Plaintiff's claims are barred by the doctrine of collateral estoppel.

3. The Plaintiff's claims are reduced or eliminated by the doctrine of setoff and recoupment.

4. The Plaintiff's claims are barred by the doctrine of res judicata.

5. The Plaintiff's claims are barred by the doctrine of unclean hands.

6. Some or all of Ashland's claims are barred by statutory contribution protection pursuant to section 113 of CERCLA, 42 U.S.C. § 9613.

7. Some or all of Ashland's claims are barred by statutory contribution protection under Rhode Island law, Rhode Island General Laws, Section 23-19-14.

8. Ashland's claims are unripe for adjudication because there is no assurance that any legitimate Ashland claims against UTC will ever exceed Ashland's unpaid obligations to UTC for the soil remedy.

9. Some or all of Ashland's costs were not incurred consistently with the National Contingency Plan and are thus unrecoverable under CERCLA.

10. Ashland is barred by the judgment in United States v. Davis, 31 F.Supp.2d 45 (D.R.I. 1998), aff'd, 261 F.3d 1 (1st Cir. 2001), from seeking any different allocation of response costs than the court reached in that judgment.

11. UTC's unrecovered response costs of more than $20 million for the soil remediation make it inequitable for a non-settling party such as Ashland to be entitled to recover anything from UTC for the groundwater cleanup.

## COUNTERCLAIMS

## INTRODUCTION

1. United Technologies Corporation ("UTC") seeks contribution from Ashland, Inc. ("Ashland") for costs incurred by UTC at the Davis Liquid Superfund Site in Smithfield, Rhode Island ("Davis Site") pursuant to § 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

2. UTC has incurred unreimbursed response costs of approximately $20 million in connection with tire, drum and container removal and soil remediation at the Davis Site.

## PARTIES

3. UTC is a Delaware corporation with its principal offices in Hartford, Connecticut.

4. Ashland is a Kentucky corporation with its principal place of business in Covington, Kentucky.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over the subject matter of these counterclaims pursuant to 28 U.S.C. § 1331, as these counterclaims arise under the laws of the United States at 42 U.S.C. § 9613.

6. This Court has jurisdiction over Ashland because Ashland contributed to the contamination of the Davis Site.

7. Venue is appropriate in this Court because the Davis Site is located within the District of Rhode Island.

**FACTS**

8. The Davis Site, in the 1970s, was owned and operated by William M. Davis and Eleanor Davis and used for the dumping of various waste materials containing hazardous substances as defined under CERCLA.

9. In 1983 the United States Environmental Protection Agency ("EPA") placed the Davis Site on the National Priorities List under CERCLA.

10. EPA conducted a Remedial Investigation and Feasibility Study for the Davis Site, issuing a Remedial Investigation Report in 1986 and a Feasibility Study Report in 1987.

11. EPA issued a Record of Decision dated September 29, 1987 ("ROD") in which EPA described the plan for remedial action at the Davis Site.

12. In 1990, the United States brought suit against UTC and other defendants under § 107 of CERCLA seeking reimbursement of response costs incurred by EPA at the Davis Site.

13. In 1993, UTC and other defendants in the United States' lawsuit brought a third-party complaint against Ashland and other parties, including the other defendants in this action, under § 113 of CERCLA seeking an allocation of past and future response costs at the Davis Site.

14. EPA issued an Explanation of Significant Differences dated July 19, 1996 ("ESD") in which EPA describe certain modifications to the ROD.

15. In 1996, UTC and other parties (not including any of the other defendants in this action) entered into a Partial Consent Decree with EPA in which, among other things, UTC and other parties agreed to reimburse EPA for past and future response costs incurred by EPA in connection with the Davis Site and agreed to perform the work required by EPA's ROD, as modified by EPA's ESD, for the Davis Site, except for the Management of Migration Components (as that phase is defined in the ROD).

16. Subsequent to the signing of the Partial Consent Decree with EPA, UTC performed a remedy at the Davis Site consisting of the removal of thousands of tires, removal of drums and containers containing hazardous substances, and removal and treatment of soil affected by the release of hazardous substances.

17. In 1998, in United States v. William M. Davis, et al., 31 F. Supp. 2d 45 (D.R.I. 1998), this Court issued its decision on UTC's claim for allocation of past and future response costs at the Davis Site, holding that Ashland was liable for 1.03% of past and future response costs. This decision was upheld by the First Circuit in United States v. William M. Davis, et al., 261 F. 3d 1 (1st Cir. 2001).

18. In 1999, UTC and other parties entered into a Consent Decree with the State of Rhode Island in which, among other things, UTC and other parties agreed to reimburse the State of Rhode Island for past and future response costs, enforcement costs, oversight costs, and State natural resources damages associated with the Davis Site and agreed to perform certain additional remedial work and limited groundwater monitoring at the Davis Site.

19. In 2002, UTC submitted a Remedial Action Report to EPA summarizing the remedial activities UTC and other performing parties conducted in response to the EPA Partial Consent Decree and the Rhode Island Consent Decree.

20. In the Remedial Action Report, UTC reported that UTC and the performing parties spent approximately $23,950,500 to implement the remedial activities required under the EPA Partial Consent Decree and the Rhode Island Consent Decree. Of that amount, UTC incurred approximately $20 million after taking into account contributions received by UTC as a result of settlements reached by UTC and/or EPA with other responsible parties.

21. In 2002, EPA issued a certificate of completion notifying UTC that it had satisfied its obligations under the Partial Consent Decree.

**COUNTERCLAIM COUNT I – CERCLA §§ 107 and 113 (UTC's Past Costs)**

22. UTC repeats and realleges, as if fully set forth herein, the allegations contained in Paragraphs 1-21 above.

23. This Court has found that Ashland is liable for its share of response costs at the Davis Site.

24. Ashland is liable to UTC under CERCLA §§ 107 and 113 for response costs UTC incurred at the Davis Site.

**COUNTERCLAIM COUNT II – CERCLA §§ 107 and 113 (Equitable Allocation of Ashland's Response Costs)**

25. UTC repeats and realleges, as if fully set forth herein, the allegations contained in Paragraphs 1-24 in Counterclaim Count II above.

26. Ashland has alleged that it has incurred response costs at the Davis Site in the investigation of groundwater contamination and that it is entitled to recover those costs from UTC. UTC denies that Ashland has incurred recoverable response costs.

27. UTC contends that Ashland is bound by this court's equitable allocation in the 1998 decision, 31 F.Supp.2d 45 (D.R.I. 1998), aff'd, 261 F.3d 1 (1st Cir. 2001). If, however, this court finds that Ashland is not bound by that allocation, UTC contends that UTC is no longer bound by that prior allocation and can seek to recover against Ashland and the other non-settling generator parties for the unrecovered response costs and interest UTC incurred in connection with that soil remediation.

28. Insofar as the Court determines that Ashland is entitled to recover costs it has incurred from UTC, UTC is entitled to an equitable allocation of those response costs and its response costs under CERCLA §§ 107 and 113, 42 U.S.C. § 9613.

**<u>COUNTERCLAIM COUNT III – Set Off (Equitable Doctrine of Recoupment)</u>**

29. UTC repeats and realleges, as if fully set forth herein, the allegations contained in Paragraphs 1-28 in Counterclaim Count II above.

30. Ashland has failed to pay UTC anything to date despite this Court's previous allocation determination under which Ashland is responsible to UTC for 1.03% of UTC's costs at the Davis Site.

31. UTC's claim for recoupment and Ashland's claim both arise from the allocation and responsibility of response costs at the Davis Site.

32. UTC's claim for recoupment and Ashland's claim both seek the same kind and nature of relief.

33. UTC is entitled to a reduction or elimination of Ashland's claims equal to the amount of Ashland's allocated portion of response costs at the Davis Site.

**CROSS-CLAIM COUNT I (as to Gar, Emhart, Black & Decker, ACCO-Bristol, Bristol, Perkin-Elmer, and Applera)**

1. UTC repeats and realleges, as if fully set forth herein, the allegations contained in Paragraphs 1-33 of the Counterclaims above.

2. Defendant Gar Electroforming ("Gar"), upon information and belief is or was a Maryland corporation with its principal offices in Towson, Maryland.

3. Defendant Emhart Industries ("Emhart"), upon information and belief, is a successor in interest or by merger to the whole or a part of Gar, and is a Connecticut corporation with its principal offices in Towson, Maryland.

4. Defendant The Black and Decker Corporation ("Black & Decker"), upon information and belief, is a successor in interest or by merger to the whole or a part of the entity formerly known as Gar Electroforming, and has its principal offices in Towson, Maryland.

5. Defendant ACCO-Bristol Division of Babcock Industries ("ACCO-Bristol"), upon information and belief, is now known as Bristol Babcock, Inc., a corporation with offices located in Watertown, Connecticut and St. Louis, Missouri.

6. Defendant Bristol, Inc. ("Bristol"), upon information and belief, is the successor in interest or by merger to the whole or a part of ACCO-Bristol Division, and is a Delaware corporation with primary offices located in St. Louis, Missouri.

7. Defendant Perkin-Elmer Corporation ("Perkin-Elmer"), upon information and belief, is or was a New York corporation with its principal offices in Norwalk, Connecticut. Upon

information and belief, the pertinent part of Perkin-Elmer Corporation became PE Corporation in or around 1999, and subsequently merged with or was succeeded by Applera Corporation.

8. Defendant Applera Corporation ("Applera"), upon information and belief, is the successor in interest or by merger to the whole or a part of Perkin-Elmer Corporation, and is a corporation with its principal offices located in Norwalk, Connecticut.

9. This Court has jurisdiction over Gar, Emhart, Black & Decker, ACCO, Bristol, Perkin-Elmer and Applera ("Cross-Claim Defendants") because each of these defendants, or their predecessors in interest, contributed to the contamination of the Davis Site.

10. This Court, in United States v. William M. Davis, et al., 31 F. Supp. 2d 45 (D.R.I. 1998), found that ACCO-Bristol, Gar and Perkin-Elmer are each liable for their respective shares of response costs at the Davis Liquid Site. This decision was upheld by the First Circuit in United States v. William M. Davis, et al., 261 F. 3d 1 (1st Cir. 2001).

11. The Cross-Claim Defendants are liable to UTC under §§ 107 and 113 of CERCLA for their share of response costs incurred by UTC.

**CROSS-CLAIM COUNT II (as to Gar, Emhart, Black & Decker, ACCO-Bristol, Bristol, Perkin-Elmer, and Applera)**

12. UTC repeats and realleges, as if fully set forth herein, the allegations contained in Paragraphs 1-11 of Cross Claim I above

13. Insofar as the Court determines that Ashland is entitled to recover costs it has incurred from UTC, the Cross-Claim Defendants are liable to UTC under §§ 107 and 113 of CERCLA for their share of those response costs.

Defendant,
United Technologies Corporation,
By its attorneys,

/s/ S. Paul Ryan
S. Paul Ryan, Esq. (R.I. Bar # 2264)
SPRyan@EPLAW.necoxmail.com
670 Willett Avenue
East Providence, RI 02915-2640
(401) 437- 0660 (telephone)
(401) 433-1605 (facsimile)

/s/ James P. Ray
James P. Ray, Esq.
jray@rc.com
John A. Poakeart, Esq.
jpoakeart@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8200 (telephone)
(860)-275-8299 (facsimile)

/s/ Russell V. Randle
Russell V. Randle, Esq.
rrandle@pattonboggs.com
Patton Boggs LLP
2550 M Street N.W.
Washington, DC 20037
(202) 457-6000 (telephone)
(202) 457-6315 (facsimile)

CERTIFICATION

I hereby certify that on the 21th day of August, 2008, I filed this document electronically with the U.S. District Court and mailed a copy of this document to Attorney Anthony F. Muri, Muri Associates LLC, 10 Weybosset Street, Providence, RI 02903-2808.

/S/ S. Paul Ryan. Esq.